# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 922 | **DATE** | 10/29/2003 |
| **CASE TITLE** | USA vs. DARIUS VAISETA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Vaiseta's section 2255 motion seeking a downward departure is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

courtroom deputy's initials: TBK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

UNITED STATES OF AMERICA, )
)
    Plaintiff, )
)
v. ) No. 01 CR 922
) Paul E. Plunkett, Senior Judge
DARIUS VAISETA, )
)
    Defendant. )



## MEMORANDUM OPINION AND ORDER

Darius Vaiseta has filed a motion pursuant to 28 U.S.C. § ("section") 2255 to amend his sentence. For the reasons set forth below, the motion is denied.

## The Legal Standard

Vaiseta is entitled to relief under section 2255 if his "sentence was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose [it], . . . the sentence was in excess of the maximum authorized by law, or [it] is otherwise subject to collateral attack." 28 U.S.C. § 2255. Section 2255 is not a substitute for appeal. Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled in part on other grounds, Castellanos v. United States, 26 F.3d 717, 719 (7th Cir. 1994). Consequently, Vaiseta cannot raise on this motion any nonconstitutional issues that he did not raise on appeal. Id. Morever, with one exception not

relevant here,[1] Vaiseta may not raise any constitutional issues he did not raise on appeal unless he can show: 1) cause for failing to appeal them and "actual prejudice" from his failure to do so; or 2) "that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice." Id.; McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir. 1996).

Vaiseta seeks a sentence reduction on the grounds that his status as a deportable alien subjects him to more severe prison conditions than he would otherwise face. This is a nonconstitutional claim that Vaiseta did not raise either during his sentencing hearing or on appeal. Vaiseta claims, however, that he failed to do so because he received ineffective assistance of counsel. But he did not raise his ineffective assistance of counsel claim on appeal either. Thus, we can reach the merits of this claim only if Vaiseta can show cause and prejudice from failing to do so.

Having been represented by the same lawyer at trial, during sentencing and on appeal, Vaiseta vaults the cause hurdle. United States v. Rezin, 322 F.3d 443, 445 (7th Cir 2003) ("[U]nless the lawyer whose assistance is in question was the defendant's lawyer on direct appeal as well (for he can hardly have been expected to accuse himself of ineffective assistance, or, for that matter, to have noticed the oversight now claimed to have rendered his assistance ineffective), the failure to appeal causes the claim to be forfeited."). The only remaining question is whether Vaiseta was prejudiced by his counsel's failure to raise the sentencing issue earlier.

The answer is no. In this circuit, a court may depart from the sentencing guidelines if it determines that the defendant's "status as a deportable alien has resulted in unusual or exceptional hardship in his conditions of confinement." United States v. Farouil, 124 F.3d 838, 847 (7th Cir.

---

[1]Ineffective assistance of counsel claims that are dependent on evidence outside the trial record may be raised for the first time in a section 2255 motion. United States v. Alcantar, 83 F.3d 185, 191 (7th Cir. 1996).

1997). Our court of appeals has said, however, that "an alien's ineligibility to participate in halfway house or other transitionary programs need not constitute an automatic basis for a downward departure, as under such a regime, every . . . alien would qualify for a downward departure." United States v. Gallo-Vasquez, 284 F.3d 780, 785 n.3 (7th Cir. 2002). Rather, that court has emphasized, a departure based on alien status is appropriate only if that status "lead[s] to conditions of confinement, or other incidents of punishment, that are *substantially more onerous* than the framers of the guidelines contemplated in fixing the punishment range for the defendant's offense." United States v. Guzman, 236 F.3d 830, 834 (7th Cir. 2001) (emphasis added).

Vaiseta contends that his sentence is substantially harsher because his deportable alien status makes him ineligible to serve any portion of his sentence in a halfway house. He has, however, offered no evidence to back up that claim. Though the Bureau of Prison ("BOP") regulations make it more difficult for aliens to obtain community placements, they do not necessarily preclude such placements. If an alien has: (1) a documented history of stable employment in this country for at least three years prior to his incarceration; (2) a verified history of domicile in this country for five or more consecutive years preceding his incarceration; and (3) verified strong family ties in the United States, he is eligible for placement in a halfway house. See BOP Security Designation & Custody Classification Manual, Policy Statement 5100.07, chpt. 7 at 3, available at www.bop.gov. Vaiseta has offered no evidence to prove that the BOP has excluded him from a halfway house program or is likely to do so because he does not meet the criteria for participation set forth in the BOP regulations. Absent proof that Vaiseta's alien status renders him ineligible for community placement, he would not have received a downward departure on that basis even if his lawyer had requested one.

Moreover, even if Vaiseta could demonstrate that his alien status precludes him from community placement, that showing would not further his case. The characteristics of Vaiseta's offense put him squarely in Zone D of the Sentencing Table. United States Sentencing Commission, Guidelines Manual, § 2B1.1 & Sentencing Table (Nov. 2000). Though the guidelines permit offenders whose guideline range falls in Zones A-C to serve their sentences, in whole or in part, in community placements, they require Zone D offenders to satisfy their minimum term "by a sentence of imprisonment." U.S.S.G. § 5C1.1(f). Because Vaiseta would not be eligible for community placement even if he were a citizen, he was not prejudiced by his lawyer's failure to raise the ineffective assistance/downward departure claim on appeal.

Vaiseta says his alien status also causes him hardship by precluding him from placement in a minimum security prison. See BOP Security Designation & Custody Classification Manual, Policy Statement 5100.07, chpt. 7 at 3, available at www.bop.gov (stating that deportable aliens "shall be housed in at least a low security level institution"). That argument might have more force if Vaiseta, solely because of his status, were incarcerated at a high security prison. But he is not. According to the BOP website, he is housed at a low security facility, one of the least restrictive security levels in the federal prison system. See id., chpt. 2 at 5 (stating that there are four security levels in BOP institutions: minimum, low, medium and high). Because Vaiseta's placement in a low security prison is not a "condition[] of confinement . . . that [is] substantially more onerous than the framers of the guidelines contemplated in fixing the punishment range for [his] offense," Guzman, 236 F.3d

at 834, the Court would not have granted him a downward departure on that basis even if his lawyer had asked for one.[2]

The last detriment Vaiseta attributes to his alien status is his placement in a Pennsylvania prison, rather than a facility closer to his Chicago-based fiancee. Vaiseta contends that he was placed in the Pennsylvania facility, rather than the facility in Oxford, Wisconsin, solely because deportation hearings are conducted there.

As an initial matter, Vaiseta has offered no evidence to prove that his alien status was the sole factor in the BOP's placement decision. Nor can we infer that such was the case in light of BOP regulations that say the Bureau attempts "to place each inmate in the lowest security level facility for which [he] qualifies, normally within 500 miles of the inmate's release residence, *while maintaining population balance throughout the Bureau.*" See BOP Security Designation & Custody Classification Manual, Policy Statement 5100.07, chpt. 3 at 3, available at www.bop.gov (emphasis added).

Moreover, even if Vaiseta's placement were motivated solely by his alien status, it would not be such an onerous condition of confinement to warrant a downward departure. As our court of appeals has noted, citizen-prisoners are routinely confined to institutions that are hundreds or thousands of miles from their families and friends. United States v. Mallon, No. 03-2049, 2003 WL 22285302 (7th Cir. Oct. 6, 2003). Thus, even if Vaiseta were incarcerated in Pennsylvania solely

---

[2]Vaiseta asserts that FCI Oxford, the facility in which he asked to be placed, is a minimum security prison. (Section 2255 Mot. ¶ 4.) According to the BOP's website, however, FCI Oxford is a medium security facility, which would be even more restrictive than the low security institution in which Vaiseta is currently housed.

5

because he is an alien, that fact would not be the kind of extraordinary circumstance that would warrant a downward departure.

In short, Vaiseta was not prejudiced by his lawyer's failure to raise this ineffective assistance claim on appeal. It is, therefore, not cognizable in this proceeding.

## Conclusion

For all of the reasons stated above, Vaiseta's section 2255 motion seeking a downward departure is denied.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: 10-29-03